UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE LL&E ROYALTY TRUST, by
ROGER D. PARSONS, TRUSTEE,

    Plaintiff,

             CASE NO. 14-CV-13833
 v.            HONORABLE GEORGE CARAM STEEH

QUANTUM RESOURCES
MANAGEMENT, LLC; QR ENERGY,
LP; and QRE OPERATING, LLC,

    Defendants.
                /

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS (DOC. #21) AND ALLOWING
PLAINTIFF 30 DAYS TO FILE AMENDED COMPLAINT**

   This action concerns a dispute over a royalty contract relating to the Jay Field, an oil and gas field in Florida and Alabama covering over 14,000 acres, with more than 70 active wells.  One or all of the defendants allegedly are the "working interest owners" of Jay Field, as established through the 1983 Conveyance of Overriding Royalty Interests (the "1983 Conveyance"), entered into by defendants' predecessors in interest.  A working interest owner "of an oil and gas field develops and manages the operations of the field, in exchange for a portion of royalties. . . ."  Compl. ¶ 15.  This includes "the right to drill for and produce oil and gas on the leased acreage."  Def's. Mot. To. Dismiss at 2.

   Plaintiff, The LL&E Royalty Trust, alleges that, pursuant to the 1983 Conveyance, it is entitled to 50% of certain accrued royalty payments (the "overriding royalty interests"

or "royalties") that have been withheld from defendants. Specifically, plaintiff contends that it stopped receiving royalties in April 2007, at the time defendants acquired the working interest in Jay Field. Moreover, plaintiff alleges that defendants have failed to comply with auditing requirements that would allow plaintiff access to defendants' books and records in order to determine the amount of royalties owed. The complaint is in seven counts, phrased by plaintiff as follows:

| | | |
|---|---|---|
| Count I | Breach of Contract | |
| Count II | Statutory Conversion | |
| Count III | Fraud | |
| Count IV | Breach of Fiduciary Duty | |
| Count V | Violation of the Racketeer Influenced and Corrupt organizations Act, 18 U.S.C. § 1961, et seq. ("RICO") | |
| Count VI | Accounting/Injunctive Relief | |
| Count VII | Appointment of a Receiver | |

Now before the court is defendants' motion to dismiss the complaint. (Doc. #21). For the reasons that follow, defendants' motion will be granted. Plaintiff shall have the opportunity to file an amended complaint to cure the deficiencies in the complaint no later than 30 days from the entry of this order.

## I. BACKGROUND

On June 1, 1983, The Louisiana Land And Exploration Company (the "LL&E Company") established the plaintiff trust, a publicly traded trust. Compl. ¶¶ 12–13. The trust owns royalty rights in oil and gas producing properties in Florida and Alabama,

including the Jay Field. *Id.* ¶¶ 13–14. The trust's interests are laid out in the 1983 Conveyance. Pursuant to the 1983 Conveyance, plaintiff and defendants share a 50-50 split of royalty payments generated from certain leases within the Jay Field.

In 2006, the working interest owners of the Jay Field were Conoco Phillips and Exxon Mobil. *Id.* ¶ 16. The field was operated by Exxon Mobil. *Id.* Defendant QRE Operating, LLC ("QRE Operating"), a Delaware limited liability company with its principle place of business in Houston, Texas, purchased all of Conoco Phillips' and Exxon Mobil's interests in 2007. *Id.* ¶ 17. At the time this lawsuit was filed, QRE Operating's sole member was QR Energy, LP ("QR Energy"), a Delaware Master Limited Partnership with its principal place of business in Texas, formed in September 2010. QRE Energy had limited partners ("unitholders") from multiple different states, including over 1,300 unitholders from Michigan. Since the filing of this lawsuit, QRE Energy has been acquired by Breitburn Energy Partners, LP, a non-party to this action.[1] Although QRE Operating purchased the working and operating interests in the Jay Field in 2007, it did not acquire the plaintiff's overriding royalty interests. *Id.* ¶ 19.

The 1983 Conveyance requires defendants,[2] when certain conditions are met, to make monthly payments to plaintiff constituting one-half of the earned overriding royalty

---

[1] It appears likely that any amended complaint will include Breitburn as a defendant.

[2] Defendants argue that QRE Operating is the sole defendant that is a party to the 1983 Conveyance. Plaintiff, on the other hand, refers to defendants collectively because it states that defendants are structured in a way that it is impossible to know which defendant is responsible for certain actions. For purposes of this motion, the differences between defendants do not matter, and the court refers to all of the defendants together. Plaintiff's amended complaint, however, should clearly set forth the specific actions taken by each defendant, to the extent that it is possible.

interests. *Id.* at ¶ 21. Defendants are the "Assignor" in the 1983 Conveyance; plaintiff is the "Assignee." Since defendants acquired the working and operating interests in Jay Field, plaintiff states that it has received a single royalty payment in September 2008. *Id.* ¶ 27. Plaintiff contends that defendants are manipulating the designation of excess production costs and an escrow account, which the 1983 Conveyance permits if done properly, to forgo making royalty payments to plaintiff. *Id.* ¶ 22.

Defendants argue that no royalty payments are due and owing to plaintiff because defendants have advanced the costs to operate the field, incurred the costs associated with a major shutdown of the field in 2008, and have expended resources to improve the field, all costs that can properly be recouped under the 1983 Conveyance before making a royalty payment to plaintiff. Essentially, defendants say that plaintiff "never pays a penny out of pocket for the costs associated with maintaining the Field and producing oil and gas from the Field." Def's. Mot. to Dismiss at 7. Instead, defendants front these costs, taking the risk of loss, and carrying the loss over to future years.

Plaintiff challenges defendants' stated reasons for not paying royalty payments pointing to the fact that, prior to defendants acquiring the working and operating interests from defendants' predecessors in interest, plaintiff was regularly receiving royalty payments for decades. Compl. ¶ 26. From the period 2000 through 2010, the special cost escrow account where funds were placed in lieu of making royalty payments to plaintiff had a balance of approximately $4.5 million. *Id.* ¶ 29. However, by June 2014, under defendants' control, the balance in the special cost escrow account had increased to $36 million. *Id.* ¶ 30. Some funds, according to plaintiff, are placed outside of an escrow account.

A large part of plaintiff's complaint is that it cannot determine whether defendants' stated reasons for not making royalty payments are accurate, because defendants allegedly are not being transparent. *Id.* ¶¶ 36–37. For example, defendants informed plaintiff that the royalty payments are being used to reimburse defendants for certain costs associated with a major shutdown of Jay Field in 2008 through 2009, and capital expenditures undertaken at the field in 2009. *Id.* ¶ 36. But plaintiff alleges that defendants have not disclosed any pertinent financials to plaintiff, and, in any event, any legitimate costs should be equally borne between defendants and the plaintiff. *Id.* ¶¶ 38–39.

Plaintiff filed this lawsuit against QRE Operating, QR Energy, and Quantum Resources Management, LLC ("Quantum Resources"). As explained, QRE Operating is a Delaware limited liability company with its principal place of business in Houston, Texas. At the time this lawsuit was filed, QR Energy was a Delaware Master Limited Partnership with its principal place of business in Houston, Texas. Quantum Resources is a Delaware limited liability company with its principal place of business in Houston, Texas.

The complaint is purportedly brought under both 28 U.S.C. § 1331, based on an alleged RICO violation, and § 1332, on the basis of diversity jurisdiction. The court's subject-matter jurisdiction (both federal question and diversity) is challenged in defendants' motion to dismiss. The motion has been fully briefed and the court held a hearing on June 1, 2015. The motion is ready for decision.

## II. ANALYSIS

The court begins its analysis by addressing defendants' challenge to the court's subject-matter jurisdiction. Defendants argue that the court lacks both federal question and

diversity jurisdiction. Next, the court turns to plaintiff's request to file an amended complaint. Finally, the court briefly addresses the parties' personal jurisdiction arguments.

### A. Subject-Matter Jurisdiction

### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack "is a challenge to the sufficiency of the pleading itself," which requires the court to "take the material allegations of the [complaint] as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). On the other hand, a factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

### 2. Federal Question Jurisdiction

The complaint alleges federal question jurisdiction based on defendants' alleged RICO violation. Defendants make a facial attack on the court's federal question jurisdiction arguing that, because plaintiff's RICO claim fails to state a claim upon which relief can be granted, the court lacks federal question jurisdiction. Therefore, in determining whether the court has federal question jurisdiction, the court "take[s] the material allegations of the [complaint] as true and construe[s] [them] in the light most favorable" to plaintiff. *Ritchie*, 15 F.3d at 598.

Because defendant challenges the sufficiency of plaintiff's pleading, the court, applying Rule 12(b)(6) of the Federal Rules of Civil Procedure, must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (citations and quotation marks omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (citing *Bell Atlantic*, 550 U.S. at 555).

Plaintiff's RICO claim is premised on 18 U.S.C. § 1962(c), which states:

> It shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

This section "generally makes it illegal for an enterprise to engage in 'racketeering activity,' as defined by predicate acts including mail and wire fraud." *Wallace v. Midwest Fin. & Mortgage Servs., Inc.*, 714 F.3d 414, 418–19 (6th Cir. 2013). To succeed under this RICO section, "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *In re ClassicStar Mare Lease Litig.*, 727 F.3d

473, 483 (6th Cir. 2013) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).

Two deficiencies in plaintiff's complaint lead the court to conclude that the complaint fails to state a RICO claim upon which relief can be granted.

*First*, plaintiff has not pleaded fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. The Sixth Circuit has explained, pursuant to Rule 9(b), "RICO plaintiffs must allege the time, place and contents of the misrepresentations." *Moon Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citation omitted). More than conclusory allegations of mail fraud and wire fraud are required to satisfy Rule 9(b)'s standard. *Thomas v. Daneshgari*, 997 F.Supp.2d 754, 763 (E.D. Mich. 2014). As this court has explained, "'[w]hen pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *C & L Ward Bros., Co. v. Outsource Solutions, Inc.*, No. 11-14773, 2012 WL 3157005, at *5 (E.D. Mich. Aug. 3, 2012) (citation and internal quotation marks omitted).

Here, plaintiff's RICO count is based on conclusory allegations that do not explain why the alleged statements made were fraudulent. The complaint contains 15 alleged specific instances of wire fraud and mail fraud. By way of example, one of the allegations states, "On January 9, 2012, Brandon Thompson, then a Quantum employee, sent an email to the Trust that attached a fraudulent financial statement concerning the Jay Field." Compl. ¶ 117. The problem with these allegations, however, is that there is no explanation

why the financial statements are fraudulent. Simply referring to the financial statements as "fraudulent" is insufficient to satisfy Rule 9(b)'s particularity requirement. Plaintiff must explain, beyond mere conclusory language, why the financial statements are allegedly fraudulent.

*Second*, the complaint fails to distinguish the difference between the breach of contract claim and the RICO claim. Another court in this district has explained, "[c]ourts, including the Sixth Circuit, are skeptical of finding RICO claims that 'sound[ ] in contract. [One] cannot successfully transmute them into RICO claims by simply appending the terms 'false' and 'fraudulent'." *Sivak v. United Parcel Serv. Co.*, 28 F.Supp.3d 701, 720 (E.D. Mich. 2014) (Rosen, CJ.) (citation and internal quotation marks omitted). Pursuant to the Sixth Circuit's directive in *Blount Financial Services, Inc. v. Walter E. Heller & Company*, 819 F.2d 151 (6th Cir. 1987), "RICO claims arising out of contracts [must] sufficiently plead fraudulent acts independent of a breach of contract." *Id.* at 721.

As currently pled, plaintiff's complaint fails to allege a freestanding RICO claim unrelated to the alleged breach of contract. As defendants argue, the currently pled RICO claim "boil[s] down to a disagreement over how net profits payments should have been computed under the Conveyance." Defs'. Mot. To Dismiss at 21. This same disagreement forms the basis of the breach of contract claim, but plaintiff has appended the word "fraudulent" to defendants' conduct to allege a RICO claim. Plaintiff must distinguish the RICO claim from the contract claim by sufficiently explaining how the RICO claim is a freestanding cause of action separate and distinct from the contract claim. In its present

form, the RICO claim — which is essentially a repackaged contract claim — fails to state a claim upon which relief can be granted.

Because the RICO claim is subject to dismissal, to the extent that the court's jurisdiction is based on a federal question, the court lacks subject-matter jurisdiction. In addition, as will be explained, the court lacks diversity jurisdiction. Therefore, the court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367 (explaining that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### 3. Diversity Jurisdiction

District courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332. The latter requirement is not met here because there are parties on both side of the lawsuit from Michigan. The court, therefore, lacks diversity jurisdiction.

As alleged in the complaint, plaintiff is a Michigan trust with its situs in Michigan, rendering its citizenship Michigan. One of the defendants, QR Energy, is also a citizen of Michigan for diversity purposes. As explained above, QR Energy is a publically-traded Master Limited Partnership. At the time plaintiff's complaint was filed, the relevant period for considering citizenship, QR Energy had over 1,300 unitholders (limited partners) in Michigan. And for purposes of diversity jurisdiction, QR Energy is a citizen of every state in which its limited partners are citizens. *See, e.g., Carden v. Arkoma Assocs.*, 494 U.S.

185, 195 (1990). See also Tampone v. Richmond, No. 10-11776, 2010 WL 3083539, at *3 (E.D. Mich. Aug. 5, 2010) (Duggan, J.) ("Where a partnership is a party to the litigation, diversity of citizenship depends upon the citizenship of each individual partner."). Because QR Energy has limited partners that have Michigan citizenship, complete diversity is lacking.

Plaintiff acknowledged this point in its response brief and in oral argument. Plaintiff, however, states that, "[i]f the Court were to conclude that there is no federal question jurisdiction, the Trust may seek to dismiss QR Energy, provide[d] Defendants will stipulate to place the Trust's $18 million in a true escrow account not under the control of QR Energy, or subject to its creditors." Pl's. Resp. Br. at 17. Absent subject-matter jurisdiction, which at this point the complaint does not sufficiently establish, the court cannot direct defendants to place $18 million allegedly owed to the plaintiff in a true escrow in exchange for plaintiff dismissing the claims against QR Energy. The fact that there are citizens of Michigan on both sides of the lawsuit strips the court of diversity subject-matter jurisdiction.

### B. Amendment

Notwithstanding the court's conclusions above, the court will grant plaintiff's request to amend the complaint in order to sufficiently allege a RICO claim or to cure the deficiency related to diversity jurisdiction. Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to amend its complaint after a responsive pleading has been filed, with written consent of the opposing party or the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff may file an amended

complaint no later than 30 days after entry of this order curing the deficiencies explained above. Plaintiff's amended complaint may restate the state law claims. If the court determines that it has subject-matter jurisdiction to proceed, the state law claims will be addressed.

Absent the filing of an amended complaint, the court will dismiss the action without prejudice based on a lack of subject-matter jurisdiction.

### C. Personal Jurisdiction

A substantial portion of the parties' papers address the issue of personal jurisdiction. QR Energy and QRE Operating argue that the court lacks personal jurisdiction over them. Plaintiff responds that there is both general and specific jurisdiction over these defendants.

Given the court's decision that it lacks subject-matter jurisdiction to proceed, the personal jurisdiction arguments, which may require an evidentiary hearing, are not addressed in this opinion. However, the court expects that the allegations in plaintiff's amended complaint will fully account for defendants' personal jurisdiction arguments. Moreover, it is not clear if plaintiff's amended complaint intends to add Breitburn as a defendant and how this would impact the personal jurisdiction analysis. If defendants believe that the amended complaint suffers the same flaws as the current complaint, they may file renewed motions to dismiss.

### III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff shall file an amended complaint within 30 days of entry of this order. Absent the filing of

an amended complaint, this case will be dismissed without prejudice.[3]

IT IS SO ORDERED.

Dated: July 14, 2015

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 14, 2015, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk

---

[3] In addition, plaintiff's motion for preliminary injunction (Doc. #15) is dismissed. At least part of the relief requested in the motion — enjoining Breitburn from assuming control over Jay Field — is now moot. To the extent that plaintiff wishes to seek the remaining relief — the appointment of a receiver over the financial operations of Jay Field — plaintiff shall file a motion after filing the amended complaint.